MICHAEL T. CARR, Respondent, v. PACIFIC MUTUAL LIFE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, June 8, 1903.

1. **Accident Insurance: CAUSE OF DEATH: INFLUENCE OF DISEASE.** Under the facts surrounding the death of an assured it is held that his death was the direct result of his sickness, and occurred while plaintiff was under the influence of disease and so exempted the company under the provisions of the policy.

2. ———: **CONSTRUCTION OF POLICY: DUTY OF COURTS.** Although a certain construction may practically nullify a policy of insurance, the courts can only construe the contract as they find it.

3. ———: ———: **EJUSDEM GENERIS.** It is held that the rule *ejusdem generis* does not apply to a certain enumeration of matters and things which should exempt the insurer from liability, since the particular words are not all of the same nature or kind.

4. ———: **BREACH OF WARRANTY: KNOWLEDGE OF AGENT.** Though an application for a policy contain a false warranty, the insurer will not be relieved from liability where the agent taking the application had knowledge of such false warranty.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale*, Judge.

REVERSED.

*J. C. Rosenberger* for appellant.

(1) The court erred in overruling the demurrer to the evidence and in refusing the peremptory instruction to find for defendant. When death or injury is caused directly or indirectly by disease, there can be no recovery on a policy containing an exception identical with the one in the policy in the case at bar. Traveler's Ass'n v. Fulton, 79 Fed. 423; National Ass'n v. Shyrock, 73 Fed. 774; Sharpe v. Traveler's Ass'n, 139 Ind. 92; Hubbard v. Accident Association, 98 Fed.

932; McCarthy v. Insurance Co., 8 Biss. (U. S.) 362; Insurance Co. v. Jones, 94 Ala. 434; Shader v. Assurance Co., 66 N. Y. 441. (2) The rule of "*ejusdem generis*" never applies except where the persons or things specifically enumerated are of the same kind or class—the same genera. State ex rel. v. Corkins, 123 Mo. 56; State v. Phelan, 66 Mo. App. loc. cit. 556; Sutherland Stat. Const., sec. 279. (3) There can be no recovery on this policy on account of the breaches of warranty made by plaintiff. Wolf v. Insurance Co., 75 Mo. App. 337; Cagle v. Ins. Co., 78 Mo. App. 215; Loehner v. Insurance Co., 17 Mo. 247, approved by United States Supreme Court, 117 U. S. 519; Greenwood v. Insurance Co., 27 Mo. App. 412; Sprague v. Insurance Co., 49 Mo. App. 423; Shoup v. Insurance Co., 51 Mo. App. 286; Lama v. Insurance Co., 51 Mo. App. 447; Burnham v. Insurance Co., 63 Mo. App. loc. cit. 93.

*Frank P. Walsh, E. R. Morrison* for respondent.

(1) The court did not err in overruling the demurrer to the evidence and in refusing the peremptory instruction to find for defendant. (2) The presumption is that plaintiff's injuries were not intentionally inflicted and the burden is upon defendant of showing that said injuries happened under conditions falling within the exceptions named in the policy. This question should have been, and was submitted to the jury, which found that said injuries were the results of an accident. Hodson v. Ins. Co., 97 Mass. 144; Campbell v. Ins. Co., 98 Mass. 381; Redman v. Ins. Co., 49 Wis. 431; Ins. Co. v. Brown, 57 Miss. 308; Meadows v. Ins. Co., 129 Mo. 76; Ins. Co. v. Hicks, 56 S. W. 87; Ins. Co. v. Hogan, 80 Ill. 35; Ins. Co. v. Bennett, 90 Tenn. 256; Niblack on Life Ins., sec. 381 and cases cited; Bower v. Supreme Lodge, 74 Mo. App. 490; Amer. and Eng. Ency. of Law, vol. 1, p. 332, cases cited. (3) The ques-

tion of the proximate cause of plaintiff's injuries was a question of fact properly submitted to the jury, which was unquestionably justified in finding the issues thereon for plaintiff, as submitted in instruction 2, given for plaintiff. Railroad v. Kellogg, 94 U. S. 74; Bailey v. Casualty Co., 8 App. Div. 127; Accident Ass'n v. Shryock, 54 Neb. 250; Ins. Co. v. Hicks, 56 S. W. 87; Amer. and Eng. Ency. of Law, vol. 1, pp. 315 and 318; Lawrence v. Ins. Co., L. R., 7 Q. B. D. 216; Winspear v. Ins. Co., 6 Q. B. D. 42. (4) A general clause of exception in a contract will be limited by the specific exceptions preceding it. Grumley v. Webb, 44 Mo. 444; St. Louis v. Laughlin, 49 Mo. 559; Am. and Eng. Ency. of Law, vol. 23, p. 441; Harper's Admr. v. Ins. Co., 19 Mo. 506; Straus v. Ins. Co., 94 Mo. 182; Ins. Co. v. Hicks, 56 S. W. 87. (5) Appellant is estopped to urge breaches of warranty as a defense in this case. Bush v. Ins. Co., 85 Mo. App. 155; Ormsby v. Ins. Co. (No. 6330 Kansas City Court of Appeals); Ins. Co. v. Barnes, 41 Kan. 161; R. S. 1899, sec. 7891; Logan v. Casualty Co., 146 Mo. 114.                                   •

BROADDUS, J.—Plaintiff's suit is on an accident policy to recover for injuries received by him during the life of said policy. The policy was issued on the 15th day of July, 1899, and the plaintiff was injured in March, 1900; proper proof of loss was made and the controversy at the trial arose as to defendant's liability under the evidence.

The first defense is that it was provided in said policy that "it did not insure or cover injuries fatal or otherwise received while or in consequence of plaintiff being or having been under the influence of or affected by, or resulting directly or indirectly in whole or in part from intoxicants, anaesthetics, vertigo, sleepwalking, or any disease or bodily infirmity; and that whatever bodily injuries were sustained by plaintiff were

received while or in consequence of plaintiff being or having been under the influence of or affected by, or resulted directly or indirectly in whole or in part from vertigo or sleepwalking or disease or bodily infirmity.'' The second defense is, that it was provided in said policy that, ''in case of injuries . . . intentionally inflicted upon the insured by himself or by any other person or inflicted upon himself or received by him while insane, the measure of this company's liability shall be a sum equal to the premium paid, the same being agreed upon as in full liquidation of all claims under this policy,'' and that whatever injuries were sustained by plaintiff were intentionally self inflicted, or were received by him while insane, in which case the liability of plaintiff by the terms of the policy is limited to the total amount of premiums paid by plaintiff to the defendant. The third defense is, that in plaintiff's application for said policy, he ''willfully, falsely and fraudulently warranted in said application that he had never received indemnity for accident, and that no accident policy ever issued to him by any other company had been cancelled when in truth and in fact plaintiff had theretofore received indemnity from another insurance company in which he had been insured, which company had cancelled the policy held by plaintiff by reason of the number and character of the claims made by plaintiff. That plaintiff received indemnity from said company for alleged accidents on three separate and distinct occasions prior to the date of his application to this company,'' and that defendant would not have issued the policy in suit except for said representations.

The evidence tended to show that prior to the issue of the policy in controversy that plaintiff had been insured in another insurance company against accidents and that he had received indemnity from such company for accidents suffered, and that his policy for that reason had been cancelled; but it was shown that the

agent who contracted with plaintiff and issued the policy herein was fully informed thereof at and prior to the time plaintiff signed said application.

It is fully agreed that at the time plaintiff was injured he was confined in a hospital at Pittsburg, Kansas, on account of sickness known as la grippe; that he was suffering, too, from a high fever and that he was mentally unconscious and had no knowledge as to how he became injured. His delirium was so great that at times he had to be restrained by force for fear of his doing injury to himself or to others. His nurse testified that on the morning of his injury she left the plaintiff in his bed in his room for a few moments; that when she returned he had left his bed, and that she rushed to the window, looked out and saw him falling. He fell a distance of about twenty feet. His injuries were serious and he did not return to consciousness until about four days thereafter.

When plaintiff was testifying he was asked if he was able to state any circumstances as to how or what caused him to get out of the window, to which he answered: "No, sir, I do not." He was also asked: "You were unconscious from the sickness from which you were suffering?" His answer was: "Yes, sir." The doctor in attendance said he was delirious.

Section three of the policy reads as follows:

"3. This insurance does not cover disappearances, nor any injury, fatal or otherwise, of which there is no visible mark upon the body, nor any such injury resulting from dueling or fighting, from exposure in war or in riot, from voluntary or unnecessary exposure to danger, medical or surgical treatment, except when amputation rendered necessary by any injury received within the period of this policy is made within ninety days from date of accident, nor injuries, fatal or otherwise, resulting from poison or anything else, con-

sciously or unconsciously, accidentally or otherwise taken, administered, absorbed or inhaled, nor injuries fatal or otherwise received while or in consequence of being or having been under the influence of or affected by or resulting directly or indirectly in whole or in part from intoxicants, anaesthetics, narcotics, sunstroke, freezing, vertigo, sleepwalking, fits, hernia, orchitis, or any disease or bodily infirmity, nor any injury, fatal or otherwise, received while violating law, resisting arrest or fleeing from justice.''

At the close of plaintiff's case the defendant interposed a demurrer to the evidence, which was overruled. The jury returned a verdict for plaintiff for $543.43. The defendant appealed.

The defendant's contention is, that under the evidence, about which there is little or no dispute, the court should have peremptorily instructed the jury to find in its favor. The plaintiff contends that the plaintiff's sickness was not the proximate cause of his injury.

In Lawrence v. Accident Ins. Co., L. R. 7 Q. B. D. 216, the facts were that the plaintiff while on a railroad platform was suddenly seized with a fit, which caused him to fall off the platform and onto the railway track. A locomotive engine passing at the time ran over his body, causing injuries from which he died. It was held that the proximate cause of his injury was in being run upon by the train, and not the fit. And if a man while fording a river is seized with a fit and falls therein and is drowned, the proximate and immediate cause of his death was not the fit, but the drowning in the river. Winspear v. Ins. Co., 6 Q. B. D. 42. If a man while sick with a disease is riding upon a car and is suddenly thrown against one of the seats and is injured, the proximate and immediate cause of his injury is the being thrown against the seat, and not the disease. Aetna Ins. Co. v. Hicks, 56 S. W. 87. If a man, emaciated and weak, while riding in a carriage is suddenly overcome by his weakness and injects morphine into

his body by means of a needle and extreme inflammation follows, the proximate and immediate cause of his injury is not the morphine but the puncture of his body by the needle.    Bailey v. Casualty Co., 8 App. Div. 127. If a man suffering from fatty degeneration of the heart is injured by a fall and his death is thereby caused by heart failure, shock and injury, the proximate and immediate cause of his death is the fall, and not his condition of fatty degeneration of the heart.    M. W. Ass'n v. Shryock, 54 Neb. 250.

The principle of these cases can be distinguished from the one at bar except that of Lawrence v. Ins. Co., in which it was held that the man who, while fording a river was seized with a fit and fell and was drowned did not owe his death proximately to the fit but to the drowning; this seems to be in point.    According to the theory of the court, the fit only caused him to fall into the water, which of itself did not injure him directly, but it was the drowning that was the immediate and proximate cause of his injury and death.    And it is contended in the case at bar that it was not the sickness of plaintiff that caused him to fall or jump out of the window that was the proximate cause of his injury, but the immediate cause was the fall itself.    We must confess that we are not impressed with the ruling in that particular case.    But we can appreciate the theory that if the individual is sick and that he merely suffers from an accident which happens to him while sick, but is not brought about as a result of such sickness, that the sickness is neither the proximate nor remote cause of his injury; and that in some instances like those cited the sickness may be the remote but not the direct and proximate cause of an injury.

But the question presented under the terms of the policy is not whether the plaintiff's sickness was the proximate and immediate cause of his injury, but whether the injury was directly or indirectly caused by his disease?    We have respectable authorities constru-

ing policies of similar provisions. In Com. Ass'n v. Fulton, 79 Fed. Rep. 423, it was held that, "under a policy of accident insurance which provides that it shall not extend to nor cover accidental injuries or death resulting from or caused directly or indirectly, wholly or in part, by disease in any form, there can be no recovery for the death of the insured if he had a disease, but for which death would not have resulted from the accident." To a similar effect was the ruling in Nat. Ass'n v. Shryock, 73 Fed. 774; Hubbard v. Ins. Co., 98 Fed. 932; Sharpe v. Assn., 139 Ind. 92. But the conditions of the policy go further still, viz.: That if an injury be received directly or indirectly in whole or in part while, or in consequence of the insured having been under the influence of, or afflicted by any disease or bodily infirmity, the defendant was not to be liable for such injury. It has been held that such a provision was proper and reasonable. Shrader v. Railway Pass. Ass'n Co., 66 N. Y. 441; Standard Ins. Co. v. Jones, 94 Ala. 434.

It is contended by respondent that such a construction would practically nullify an accident policy, besides being contrary to all reason. There is some force in this position, but what are the courts to do in such cases? We can only construe the contract as we find it. The parties had a right to so contract, as there is no law prohibiting such, and it does not appear to be *ultra vires*. Until the Legislature places a limit upon the right of life insurance companies to make contracts limiting their liability to the minimum the courts are bound to recognize them as they find them.

It is contended that as the policy in question provides that the appellant shall not be liable for injuries resulting directly or indirectly, in whole or in part, from intoxicants, anaesthetics, narcotics, sunstroke, freezing, vertigo, sleepwalking, fits, hernia, orchitis or any disease or bodily infirmity, the latter clause, "any dis-

ease or bodily infirmity'' is limited by the preceding exceptions, viz: intoxicants, etc.   In Grumley v. Webb, 44 Mo. 444, the court declared the rule to be: ''Language however general in its form, when used in connection with a particular subject matter, may be presumed to be used in subordination to that matter, and will be construed and limited accordingly.'' In St. Louis v. Laughlin, 49 Mo. 559, the rule was stated thus: ''It is an established rule of construction where general words follow particular ones, to construe the former as applicable to the things or persons particularly mentioned.'' In State ex rel. v. Corkins, 123 Mo. 56, the rule as stated was held to apply only where the particular words are of the same nature or kind.   See also State v. Phelan, 66 Mo. App. 548.   The particular words referred to are not all of the same nature or kind.   There is no kinship between the words, ''orchitis, hernia, freezing and sunstroke'' and no sort of relationship between them and the words, ''intoxicants, sleepwalking, narcotics,'' etc.   These words being of different *genera*, the meaning of the general words ''any disease or bodily infirmity'' remain unaffected by their connection with them.

The defendant insists also that plaintiff can not recover on account of breach of warranty set out in its answer: that he had never made any claim against any other company for accident indemnity, and that no accident policy ever held by him had been cancelled. Yet, as the agent of the defendant knew at the time he prepared the application and delivered the policy that plaintiff had made claim against another accident company for indemnity and that an accident policy held by him had been so cancelled, the transaction amounted to a waiver of said warranty.   Bush v. Ins. Co., 85 Mo. App. 155; James v. Ins. Co., 148 Mo. 1; Springfield Laundry Co. v. Ins. Co., 151 Mo. 90.

In view of what has already been said it is unnecessary to notice defendant's second defense.

For the reasons given we are of the opinion that plaintiff's injury was the direct result of his sickness; and whether it was or was not is immaterial, for it can not be denied that it was not at least the indirect result of his condition. In either event the defendant would not be liable under the terms of the policy. And we are further of the opinion that by the terms of said policy defendant was exempted from liability by reason of the fact that said injury occurred while plaintiff was under the influence of disease.

The cause is reversed. All concur.