# January Term, 1923

## No. 10,251.

NATIONAL LIFE INSURANCE COMPANY OF THE UNITED STATES OF AMERICA *v.* COUGHLIN, ADMINISTRATOR.

Decided April 3, 1922.   No change in opinion on rehearing January 8, 1923.

Action on accident insurance policy.   Judgment for plaintiff.

### *Reversed.*

1. INSURANCE—*Accident Policy—Construction.* Where the assured in an accident policy was killed by a revolver shot intentionally fired by another who did not see nor intend to injure him, it is held that the insurer was not liable under a clause of the policy which provided that it should not cover injuries, fatal or non-fatal, caused by the intentional act of any person.

2. CONTRACT—*Construction.* A contract which is definite and certain must stand as made by the parties, and a court is powerless to substitute another therefor by the process of construction.

*Error to the District Court of Pueblo County. Hon. James A. Park, Judge.*

Mr. WILLIAM B. VATES, for plaintiff in error.

Mr. H. P. VORIES, Mr. N. WALTER DIXON, Mr. THOMAS
J. DIXON, for defendant in error.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THE parties plaintiff and defendant were reversed in
the trial court and for convenience are hereinafter re-
ferred to as they appeared there.

One Charles Goldtrap carried an accident and health
policy in defendant company which provided for payment
of $300.00 in case of death and designated May Coughlin
as the beneficiary.    To recover thereon this suit was
brought and from a judgment on the pleadings in favor
of plaintiff, defendant brings error.

One clause of the policy reads:

"This Policy does not cover injuries, fatal or non-fatal,
*   *   *   which are caused wholly or in part by the inten-
tional act of any person other than the Insured (assaults
committed on the Insured for the sole purpose of burglary
or robbery excepted)."

The facts are settled by stipulation as follows:

"On the 27th day of December 1919, Charles Goldtrap
while near or on the premises of Elizabeth Haskett, was
shot and killed by the said Elizabeth Haskett some time
during the evening of said day; that the said Elizabeth
Haskett heard some one near the premises; that she went
to the back door of her residence, fired a revolver into the
darkness to frighten away anyone who might be around;
that at said time she did not see the said Charles Goldtrap
or anyone else, did not know that he was near and did not
intend to kill him or anyone else, but that she did intend
to fire the revolver and did fire the revolver, and this was
the shot that killed Charles Goldtrap, and shortly there-
after his body was found near or in the alley in the rear of
her house."

The sole question for our determination is:    Was this
accident excluded by the language of the clause of the

policy above quoted? If the position of the plaintiff is correct said clause must be construed as if worded thus:

"This Policy does not cover injuries, fatal or non-fatal, intentionally inflicted by the act of any person other than the Insured (assaults committed on the Insured for the sole purpose of burglary or robbery excepted)."

It will thus be observed that we are called upon to decide the distinction, if any, between "injuries caused by the *intentional act* of any person" and "injuries *intentionally inflicted* by the act of any person."

It is suggested by counsel for plaintiff that the correct interpretation of the disputed clause is to be found in the parenthesis, and that the only accidents excepted are those received as the result of "assaults committed on the Insured for the sole purpose of burglary or robbery." We think this position deserves no serious consideration and that it is perfectly apparent that the parenthetical clause is an exception from the exception.

In this case death resulted "wholly or in part" from the intentional firing of the shot, though the result thereof was not intended and could not have been foreseen, just as in another case it resulted "wholly or in part" from the intentional striking of a blow, though the result thereof was not intended and could not have been foreseen. *Ryan v. Continental Casualty Co.,* 94 Neb. 35, 142 N. W. 288, 48 L. R. A. (N. S.) 524, Ann. Cas. 1914C, 1234. In that case, the only one in point brought to our attention, the same phrase was under consideration by the court.

If the language here in question were ambiguous, the judgment might be affirmed under the rule of construction laid down in *Preferred Accident Ins. Co. v. Fielding,* 35 Colo. 19, 83 Pac. 1913, 9 Ann. Cas. 916, but we find no ambiguity. This was an "injury caused by an intentional act" of Elizabeth Haskett, but it was not "intentionally inflicted" by her.

The unfairness of such a contract and the narrow limits of the field covered by it are strongly urged in support of an affirmance. The obvious answer is that the contract,

being definite and certain, must stand as made by the parties. The court is powerless to substitute another therefor by process of construction.

The judgment is reversed.

MR. CHIEF JUSTICE SCOTT, and MR. JUSTICE CAMPBELL not participating.

MR. JUSTICE TELLER sitting as Chief Justice, dissents.

MR. JUSTICE TELLER dissenting:

I cannot agree with the interpretation which the majority opinion gives to the words "intentional act", used in the policy in suit. It entirely ignores their setting and evident purpose. The policy, in that clause, deals with acts as related to the insured; the acts of other persons which do not purposely affect him have no bearing on the case. The opinion disregards this evident fact that the act, to have any relevancy to the subject matter of the contract, must include its effect upon the insured. The *intention* contemplated by the parties must refer to the act as it relates to the insured. Any other construction makes it without apparent purpose. The parties were considering and dealing with the subject of injuries to the insured, and the paragraph in which these words occur contains a list of acts for which the insurer is not liable. It certainly would not be liable for the intentional discharge of a pistol unless injury to the insured resulted from it. It follows necessarily that the result of the shot forms a part of the act against liability for which the insurer was providing. It cannot be denied that the insured was killed accidentally, as that term is commonly used.

According to the reasoning of the opinion, the injury to the insured would have been covered by the policy had the pistol been accidentally discharged. That is to say, the right of recovery depends, not upon the intent to injure the insured, the sole ground upon which a reasonable exception to liability can rest, but upon the intent to discharge the pistol, an act which in this case was done with-

out any thought concerning the insured. The discussion in the opinion of the meaning of these words shows that they are open to construction, and, that being so, according to a well settled rule they should be construed in favor of the insured.